**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>– against –<br><br>DAY TO DAY IMPORTS INC., OXGORD INC., STANZINO INC., LIBERTY PROPERTY LIMITED PARTNERSHIP, and PROLOGIS, INC.,<br><br>Defendants. | Case No. 1:22-cv-2181<br><br>**COMPLAINT** |

Plaintiff Liberty Mutual Insurance Company ("Liberty"), by and through its attorneys, as and for its Complaint against Defendants Day To Day Imports Inc., Oxgord Inc., Stanzino Inc., Liberty Property Limited Partnership, and Prologis, Inc. alleges the following upon information and belief:

**PARTIES**

1. Plaintiff Liberty was and is a Massachusetts stock insurance company, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts and with its principal marine claims office located at 28 Liberty Street, 5th Floor, New York, New York 10005.

2. Plaintiff Liberty was and is an insurance company that was and is licensed to do business in the State of New York.

3. Defendant Day To Day Imports Inc. was and is a foreign business entity organized and existing under and by virtue of the laws of the State of California with a principal place of business located at 16325 S. Avalon Blvd., Gardena, California 90248.

4. At the time of the filing of this Complaint, Defendant Oxgord Inc. registered and designated, with the California Secretary of State, Akiva Nourollah, located at 16325 S. Avalon Blvd., Gardena, California 90248, as its agent for service of process.

5. Defendant Oxgord Inc. was and is a foreign business entity organized and existing under and by virtue of the laws of the State of California with a principal place of business located at 16325 S. Avalon Blvd., Gardena, California 90248.

6. At the time of the filing of this Complaint, Defendant Oxgord Inc. registered and designated, with the California Secretary of State, Yehuda Nourollah, located at 16325 S. Avalon Blvd., Gardena, California 90248, as its agent for service of process.

7. Defendant Stanzino Inc. was and is a foreign business entity organized and existing under and by virtue of the laws of the State of California with a principal place of business located at 16325 S. Avalon Blvd., Gardena, California 90248.

8. At the time of the filing of this Complaint, Defendant Stanzino Inc. registered and designated, with the California Secretary of State, David Ghods, located at 16325 S. Avalon Blvd., Gardena, California 90248, as its agent for service of process.

9. "Arts Naturals" is an alter ego, *nom de guerre*, fictitious, and/or assumed name under which Defendants Day To Day Imports Inc. and Oxgord Inc. and Stanzino Inc., collectively and/or individually, operate their business(es).

10. Defendants Day To Day Imports Inc. and Oxgord Inc. and Stanzino Inc. are inter-related and/or affiliated business entities (hereinafter collectively referred to as "Day To Day").

11. At and during all the times hereinafter mentioned, upon information and belief Day To Day directly or through its intermediaries and/or agents, was engaged in the business of supplying pet accessories, auto accessories, household cleaning products and soaps, hand

sanitizers, and other merchandise to its customers in the State of New York, and regularly does or solicits business, and engages in a persistent course of conduct and/or derives substantial revenue from goods used or services rendered in this State.

12. At and during all the times hereinafter mentioned, Day To Day directly or through its intermediaries and/or agents, including but not limited to Oak Tree Insurance Services LLC, solicited and negotiated for the subject insurance contract (described more fully herein) within this State and submitted to Liberty, and sought adjustment of, its claim within this State.

13. Defendant Liberty Property Limited Partnership was and is a foreign business entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with a principal place of business located at 500 Chesterfield Parkway, Malvern, Pennsylvania 19355.

14. Upon information and belief, the sole partner of Defendant Liberty Property Limited Partnership is non-party Liberty Property Trust and/or non-party Prologis, L.P.

15. Upon information and belief, non-party Liberty Property Trust is a foreign real estate investment trust and wholly owned subsidiary of non-party Prologis, L.P.

16. Upon information and belief, Defendant Liberty Property Limited Partnership is a wholly owned subsidiary of non-party Prologis, L.P., a foreign limited partnership.

17. Upon information and belief, non-party Prologis, L.P. is a foreign limited partnership and wholly owned subsidiary of Defendant Prologis, Inc.

18. Defendant Prologis, Inc. was and is a foreign business entity organized and existing under and by virtue of the laws of the State of Maryland with a principal place of business located at 1800 Wazee Street, Suite 500, Denver, Colorado 80202.

19. At the time of the filing of this Complaint, Defendant Prologis, Inc. registered and designated, with the New York Department of State, the Corporation Service Company, located at 80 State Street, Albany, New York 12207, as its agent for service of process.

20. At and during all the times hereinafter mentioned, upon information and belief Defendants Liberty Property Limited Partnership and Prologis, Inc. directly or through its intermediaries and/or agents, was engaged in the business of supplying property management services and investment and rental property and other services to its customers in the State of New York, and regularly does or solicits business, and engages in a persistent course of conduct and/or derives substantial revenue from goods used or services rendered in this State.

## JURISDICTION AND VENUE

21. This action is, in relevant part, filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2018), and an actual controversy of a justiciable nature exists between Plaintiff Liberty and Defendant Day To Day Imports and Liberty Property Limited Partnership, and Prologis, Inc. involving the rights and obligations under a contract of marine insurance in connection with Day To Day's claim for losses, in excess of $15,000,000 arising from a fire at Day To Day's warehouse and operations in Gardena, California. Depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court without further suit.

22. This controversy comes within the Court's original diversity jurisdiction under 28 U.S.C. § 1332 (2018) because the parties are citizens of different states and the mount in controversy exceeds $75,000.00.

23. To the extent that Plaintiff Liberty asserts any claim not within this Court's original jurisdiction, Plaintiff Liberty invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (2018).

24. Venue is proper in this Court because the contract of insurance between Liberty and Day To Day in dispute, and pursuant to which Defendants Liberty Property Limited Partnership and Prologis, Inc. also claim they are additional insureds, provides in relevant part at Clause 68:

> VENUE
>
> It is hereby agreed that any legal suit, action or proceeding arising out of or in connection with this policy shall be instituted in the United States District Court located in the City County and State of New York, or, if that court shall lack subject matter jurisdiction, a Court of the State of New York located in the City County and State of New York. The Insured and The Company irrevocable and unconditionally submit to the exclusive jurisdiction of such court and waive any objection to such venue, and agree not to plead or claim in any suit, action or proceeding so instituted that such court is an inconvenient forum.

25. Venue is proper in this Court because a substantial part of the events giving rise to the dispute herein occurred in this County, including, but not limited to, acts of solicitation and negotiation for the subject insurance contract, and the adjustment of Defendant Day To Day's claim.

## STATEMENT OF THE CLAIM

### The Insurance Policy

26. On or before December 20, 2020, Day To Day retained, employed, or otherwise agreed with Oak Tree Insurance Services LLC ("Oak Tree") for the latter to act as Day To Day's licensed insurance broker and agent.

27. At and during all the times hereinafter mentioned, Oak Tree is a domestic limited liability company with a principal place of business located at 326 Kingston Avenue, Brooklyn, New York 11213.

28. At and during all the times hereinafter mentioned, Oak Tree is a property/casualty and excess line broker licensed by the New York Department of Financial Services.

29. Upon information and belief, from its New York office, Oak Tree, as agent for and on behalf of Day To Day, solicited from and negotiated with Liberty the procurement of a marine cargo insurance policy.

30. Liberty executed and issued the subject marine cargo insurance policy to Day To Day in New York.

31. A true and authentic copy of the subject "Marine Cargo Policy," assigned policy number NYOMC11625401, applicable for shipments made on and after December 20, 2020 (subject to the full terms and conditions of the policy), together with amendatory endorsements is incorporated herein and attached hereto as Exhibit "1."

32. Day To Day delegated to Oak Tree the responsibility for acquiring insurance for Day To Day and its affiliates in relation to the coverages provided by the subject marine cargo insurance policy and, through Oak Tree, obtained the requested insurance coverage.

33. The Brokers clause (Clause 45) in the subject marine cargo insurance policy provides: "It is a condition of this policy, and it is hereby agreed that The Insured's broker or any substituted brokers, shall be deemed to be exclusively the agents of the Insured [i.e., Day To Day] and not of The Company [i.e., Liberty] in any and all matters relating to, connected with or affecting this insurance."

34. The Choice of Law clause (Clause 69) provides in relevant part:

> CHOICE OF LAW
>
> It is agreed that the rights and obligations of The Company and The Insured hereunder shall be governed by the federal maritime common law of the United States or, in the absence of controlling federal maritime common law of the United States, the law of the state of New York, irrespective of any principles of choice of law.

35. The rights and obligations of the parties to the subject marine cargo insurance policy and herein are subject to the federal maritime common law of the United States and, in the absence thereof, the law of the State of New York.

36. The subject marine cargo policy generally provides coverage for physical loss or damage to Day To Day's goods during transit, but additionally provided for a limited extension of coverage for physical damage to goods stored in approved warehouses pursuant to the Warehouse Storage Coverage Endorsement.

37. Pursuant to Endorsement No. 5 to the subject marine cargo policy, the Warehouse Schedule and/or Deductible Amendment Endorsement, Liberty provided $15 million of coverage for goods stored in the warehouse located at 16325 South Avalon Boulevard, Gardena, California, subject to the full terms and conditions of the subject marine cargo policy and endorsements thereto.

**<u>The Fire & Day To Day's Claim</u>**

38. On September 30, 2021, and at all times relevant, Liberty Property Limited Partnership owned a warehousing and storage facility located at 16325 South Avalon Boulevard, Gardena, California.

39. On September 30, 2021, and at all times relevant, Liberty Property Limited Partnership leased a warehousing and storage facility located at 16325 South Avalon Boulevard, Gardena, California.

40. On September 30, 2021, and at all times relevant, Liberty Property Limited Partnership operated a warehousing and storage facility located at 16325 South Avalon Boulevard, Gardena, California.

41. On September 30, 2021, and at all times relevant, Liberty Property Limited Partnership represented itself to the public as providing warehousing and/or storage services at the warehousing and storage facility located at 16325 South Avalon Boulevard, Gardena, California.

42. On September 30, 2021, and at all times relevant, the warehouse facility located at 16325 South Avalon Boulevard, Gardena, California, stored goods on behalf of multiple parties, including Day To Day.

43. On or about September 30, 2021, a fire occurred at the warehouse facility located at 16325 South Avalon Boulevard, Gardena, California.

44. The fire burned cartons, pallets, ocean containers, and/or inland trailers located at the yard outside of the warehouse at 16325 South Avalon Boulevard, Gardena, California.

45. At the time of the fire, Day To Day allegedly owned or had a proprietary interest in goods stored in cartons, pallets, ocean containers, and/or inland trailers at the yard at the warehouse facility.

46. Upon information and belief, the fire was mostly contained to the outside yard, but some fire and/or smoke entered the warehouse through the loading bay doors.

47. Upon information and belief, the automatic fire sprinkler/suppression system inside the warehouse was not triggered or otherwise activated by the fire.

48. At the time of the fire, Day To Day allegedly owned or had a proprietary interest in goods stored inside the warehouse at the warehouse facility.

49. At the time of the fire, Day To Day's goods were stored in pallets and/or cartons and/or boxes inside the warehouse at the warehouse facility.

50. At the time of the fire, Day To Day's in goods, or a portion of such goods, inside the warehouse were stored in retail boxes within cartons, that were placed on pallets, and which were covered in shrink-wrap.

51. On October 1, 2021, Day To Day provided first notice of the fire to Liberty and provided a "Property Loss Notice."

52. Day To Day's Property Loss Notice provided the description of loss and damage as: "Fire loss at the 16325 South Avalon Blvd Gardena, CA 90248 location."

53. Day To Day appointed Apex Public Adjusters, Inc., to advise and assist Day To Day in the measurement, documentation, and adjustment of Day To Day's alleged loss.

54. Day To Day instructed Liberty to direct all verbal and/or written communications to Apex Public Adjusters, Inc.

55. On October 1, 2021, the same day that Day To Day provided first notice of the fire to Liberty, Liberty appointed a surveyor to coordinate an inspection of the warehouse facility.

56. On October 1, 2021, Liberty appointed King Marine Surveying Company, Inc. to conduct an inspection of the warehouse facility.

57. On October 1, 2021, the same day that Day To Day provided first notice of the fire to Liberty, Liberty acknowledged receipt of Day To Day's notice and advised Day To Day of the appointment of a surveyor for purposes of conducting an initial inspection.

58. On October 4, 2021, King Marine Surveying Company, Inc. conducted an initial inspection of the warehouse facility.

59. During the initial inspection, the surveyor from King Marine Surveying Company, Inc. found that a large portion of Day To Day's goods were stored at the outside yard at the warehouse facility and that the vast majority of Day To Day's goods stored inside the warehouse were in good condition.

60. On October 4, 2021, Liberty requested that Day To Day "provide a valued inventory of the stock that was in the warehouse at the time of the fire" and made similar requests repeatedly thereafter.

**Day To Day's Claim For Water And/Or Fire Damage Pallets**

61. On or about October 7, 2021, Day to Day requested that the surveyor conduct a further inspection of Day To Day's goods allegedly stored inside the relevant warehouse at the time of the aforementioned fire, which allegedly sustained water and/or fire damage.

62. On October 7, 2021, the surveyor from King Marine Surveying Company, Inc. conducted a further inspection of the warehouse and observed some pallets with water and/or fire damage.

63. At the time of the aforementioned second inspection by the surveyor from King Marine Surveying Company, Inc., Day To Day had failed to segregate the allegedly water and/or fire damaged pallets, and the goods within the pallets,

64. At the time of the aforementioned second inspection by the surveyor from King Marine Surveying Company, Inc., Day To Day had failed to provide to Liberty and/or the surveyor a tally of the number of such allegedly water and/or fire damaged pallets.

65. On October 13, 2021, Liberty requested that Day To Day segregate the damaged from undamaged goods and made similar requests repeatedly thereafter.

66. Liberty appointed the expert forensic accountants, Meaden & Moore, LLP, to investigate the value of Day To Day's goods allegedly damaged as a result of the fire.

67. On October 18, 2021, the expert forensic accountants, Meaden & Moore, LLP, issued an initial request for information to Day To Day.

68. On November 9, 2021, Day To Day advised Liberty that "[t]he goods have been segregated to the best ability of the client."

69. Contrary to Day To Day's representation to Liberty on November 9, 2021, Day To Day had failed to segregate the allegedly damaged goods, as opposed to entire pallets, allegedly damaged by fire and/or water.

70. Day To Day represented to Liberty that Day To Day was unable to comply with its duty to segregate the damaged goods from undamaged goods.

71. Due to Day To Day's failure to segregate the allegedly damaged goods on fire- and/or water-damaged pallets (as opposed to the whole pallet), Liberty engaged a third-party salvor — without prejudice to Liberty's rights — to remove the allegedly fire- and/or water-damaged pallets from the warehouse and segregated the actual goods within the pallets.

72. On November 29, 2021, Day To Day agreed to Liberty's offer to remove the allegedly fire- and/or water-damaged pallets from the warehouse and engage a third-party salvor to inspect and segregate the contents of those pallets.

73. Upon segregating the damaged from undamaged goods within the allegedly fire- and/or water-damaged pallets, the salvor found a significant quantity of the goods that was either undamaged, sustained damage only to their cartons, or were salvageable.

74. On or about December 16, 2021, the third-party salvor completed counting the allegedly damaged pallets and segregating damaged from undamaged goods, and assessing the extent of any potentially damaged goods.

75. On December 23, 2021, Day To Day provided some financial documentation to substantiate the valuation of its allegedly physically damaged goods.

76. On January 14, 2022, Liberty made a payment on account to Day To Day in the amount of $250,000 for Day To Day's anticipated substantiation of its claim for, and valuation of, allegedly physically damaged goods.

77. On or about February 11, 2022, Liberty made a second payment on account to Day to Day in the amount of $16,400.00.

**Day To Day's Claim for Smoke Damaged Goods**

78. Liberty appointed the expert chemists, Chemistry Matters, Inc., to investigate Day To Day's claim that goods allegedly stored inside the relevant warehouse at the time of the aforementioned fire sustained smoke damage.

79. Between October 12-13, 2021, the expert chemists gathered samples of the goods inside at the warehouse for further laboratory testing to assess Day To Day's goods for the alleged smoke damage.

80. At the conclusion of the expert chemists' collection of samples, on October 13, 2021, Day To Day refused to permit the expert chemists to dispatch the samples for laboratory testing.

81. Day To Day continued to refuse to permit the expert chemists from dispatching the samples collected from the warehouse and offered at least three different reasons on different

occasions as to why it refused to permit the expert chemists to dispatch the samples for laboratory testing, which was necessary to Liberty's investigation.

82. On October 27, 2021, Day To Day finally permitted Liberty to retrieve the samples from the warehouse and dispatch them for laboratory testing.

83. The expert chemists tested the samples collected from the warehouse and found that the samples had not been physically damaged by smoke.

**Day To Day's Goods Stored Outside And/Or In The Open Yard**

84. Upon making a coverage determination for a portion of Day To Day's claim — in particular, for alleged damaged to goods stored outside of the relevant warehouse and the cost of removing similarly situated debris — Liberty advised Day To Day of its determination.

85. On October 13, 2021, Liberty formally declined Day To Day's claim for damage to goods stored outside the warehouse and for removing similarly situated debris outside the warehouse. Annexed hereto as Exhibit "2" is a true and authentic copy of Liberty's partial declination and partial reservation of rights to Day To Day.

**AS AND FOR ITS FIRST CAUSE OF ACTION**

86. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "85" of this Complaint as if fully set forth herein.

87. On or about February 23, 2022, Day to Day made claim under the Consolidation/Deconsolidation clause in the subject marine cargo policy for goods allegedly remaining in ocean containers, which had been delivered to the warehouse but remained outside at the time of, and destroyed in, the fire on September 30, 2021.

88. On or about February 23, 2022, Day to Day made claim under the Domestic Transit Coverage Endorsement attached to the subject marine cargo policy for goods allegedly preloaded

in trailers for domestic deliveries to its customers, which Day to Day claims were destroyed in the fire on September 30, 2021.

89. On March 4, 2022, Liberty denied Day to Day's claim for the goods allegedly loaded in trailers or contained in the ocean containers under the Domestic Transit Coverage Endorsement and the Consolidation/Deconsolidation clause, respectively on the grounds that the goods in trailers had not yet entered domestic transit with no attachment of coverage and that the goods in the sea containers had been delivered to, and accepted by Day to Day, at final destination thereby terminating the ocean transit coverage at the time of the September 30, 2021 fire.

90. Day to Day further claims coverage for all goods stored in the yard at the warehouse under the Warehouse To Warehouse And Marine Extension Clause in the subject marine cargo policy.

91. Under the Warehouse To Warehouse clause, Day to Day claims the goods outside the warehouse are subject to the transshipment coverage.

92. Coverage during transshipment is only available after the commencement of transit and before delivery to final destination.

93. All goods in the yard outside of the warehouse either had not yet entered into transit and/or had been delivered to final destination and therefore, were not at a transshipment point and transshipment coverage was not triggered and/or available to Day to Day.

94. Day to Day claims continued coverage for the goods in the yard of the warehouse under the Marine Extension clause in the subject marine cargo policy.

95. By the terms of the Marine Extension clause coverage remains in effect for goods delayed during the ordinary course of transit and provided that such delays are not within the control of Day to Day.

96. At the time of the fire on September 30, 2021, none of the goods located in the yard outside of the warehouse were in the ordinary course of transit and therefore, the Marine Extension clause has no applicability to the subject claim.

97. At the time of the fire on September 30, 2021, the movement of the goods located in the yard of the warehouse were under the control of Day to Day and any so-called stoppage in transit of these goods were solely by reason of Day to Day's decisions and/or actions and therefore the Marine Extension clause has no applicability to the subject claim.

98. Day To Day has made a demand upon Liberty for coverage for its goods stored outside of the warehouse located at 16325 South Avalon Boulevard, Gardena, California and allegedly damaged as a result of the aforementioned fire.

99. The subject marine cargo policy includes the Warehouse Storage Coverage Endorsement, which provides coverage against all risks of loss for property owned by Day To Day while temporarily stored within a store or warehouse approved by Liberty, but excludes property stored outside or in the open. It provides:

> WAREHOUSE STORAGE COVERAGE ENDORSEMENT
>
> It is understood and agreed that the following terms and conditions are hereby made a part of this policy.
>
> 1. Property Insured
>
> This endorsement is hereby extended to cover property owned by the Insured, and similar property of others for which the Insured is liable or is under obligation to insure, and for which the Insured may be liable in the event of loss while temporarily stored within the continental limits of the United States.
>
> This insurance shall not attach with respect to any such place of storage, however, until the store or warehouse has been submitted to and approved by the Company and Company

rates established therefore, or as otherwise provided by Clause 7 of this endorsement.

2. Perils, Terms of Average and Exclusions

This endorsement covers against all risks of physical loss or damage from any external cause irrespective of percentage, except the risks of war, strikes, riots and other risks excluded by the FC&S and SR&CC Warranties and by the Nuclear Exclusion Clause Paramount contained in this policy.

3. Perils/Property Exclusions

This section does not insure:

. . . .

(l) Property stored outside or in the open.

. . . .

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

100. Day To Day's claim for damage to goods stored outside of the warehouse or in the open yard at the warehouse facility are excluded from coverage.

101. Day To Day did not request that the coverage under the marine cargo policy be extended to cover goods stored outside of the warehouse, such as in ocean containers and/or inland trailers.

102. Day To Day did not request that the coverage under the marine cargo policy be extended to cover goods stored in the open, such as pallets and cartons stored in the yard at the warehouse facility.

103. Day To Day did not and has not substantiated its loss for the goods allegedly damaged and stored outside of the warehouse and/or in the open yard at the warehouse facility.

104. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled to coverage under the subject marine cargo policy for the claimed loss for goods stored outside of the warehouse and allegedly damaged as a result of the fire.

## AS AND FOR ITS SECOND CAUSE OF ACTION

105. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "104" of this Complaint as if fully set forth herein.

106. Day To Day has made a demand upon Liberty for coverage for the removal of debris caused by Day To Day's goods allegedly damaged as a result of the aforementioned fire and stored at the warehouse located at 16325 South Avalon Boulevard, Gardena, California.

107. The subject marine cargo policy includes the Debris Removal clause (Clause 56), which extends coverage for the removal and disposal of goods insured under the policy while the goods are in the ordinary course of transit. It provides:

> DEBRIS REMOVAL
>
> This policy is extended to cover expenses incurred by The Insured for the obligatory removal and disposal of all debris of the goods insured under this policy or for its destruction which may be occasioned by loss by any of the perils insured under this policy while the goods insured are in the ordinary course of transit in accordance with the warehouse to warehouse and marine extension clause, except that The Company shall not be liable under this clause for more than 10% of the insured value of the shipment.
>
> Nothing contained herein shall be construed to cover any expenses incurred in consequence of or to prevent or mitigate pollution or contamination hazards, or any threat or liability thereof or cleanup expenses for which The Insured may be liable under any pollution statute. . . .

108. The marine cargo policy does not cover Day To Day's claim for the cost of removing debris caused by Day To Day's goods allegedly damaged as a result of the fire at the

warehouse because Day To Day's goods were not in the ordinary course of transit at the time of the fire.

109. The marine cargo policy does not cover Day To Day's claim for the cost of removing debris caused by Day To Day's goods allegedly damaged as a result of the fire at the warehouse to the extent Day To Day's claim includes expenses incurred in consequence of, or to prevent or mitigate, pollution or contamination hazards, or the threat or liability of such expenses.

110. The marine cargo policy does not cover Day To Day's claim for the cost of removing debris caused by Day To Day's goods allegedly damaged as a result of the fire at the warehouse to the extent Day To Day's claim includes cleanup expenses under any pollution statute.

111. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled to coverage under the subject marine cargo policy for the claimed loss for the cost of removal of debris caused by Day To Day's goods allegedly damaged as a result of the fire and stored at the warehouse.

**AS AND FOR ITS THIRD CAUSE OF ACTION**

112. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "111" of this Complaint as if fully set forth herein.

113. Day To Day has made a demand upon Liberty for coverage for alleged smoke damage to all goods allegedly stored in the warehouse located at 16325 South Avalon Boulevard, Gardena, California.

114. The subject marine cargo policy includes the Warehouse Storage Coverage Endorsement, which provides coverage against "all risks of physical loss or damage from any external cause . . . ."

115. On November 9, 2021, Day To Day stated that it was "evaluating the condition of the goods within the warehouse for condition of salability and will advise," but failed to subsequently advise Liberty of the steps Day To Day allegedly undertook to evaluate the condition of the allegedly smoke-damaged goods since November 9, 2021.

116. Upon information and belief, Day To Day continued to sell and/or ship goods to customers and/or third-parties from the subject warehouse after November 9, 2021.

117. Day To Day relied upon, and continues to rely upon, the opinion of a hygienist from American Environmental Group in support of its claim for alleged smoke damage to all goods allegedly stored in the warehouse.

118. Upon information and belief, the hygienist from American Environmental Group upon which Day To Day relied to substantiate its claim collected samples from the master/shipping carton and not the retail carton of the allegedly damaged goods.

119. Upon information and belief, the hygienist from American Environmental Group upon which Day To Day relied to substantiate its claim failed to collect and test samples from the goods themselves.

120. Upon information and belief, the hygienist from American Environmental Group upon which Day To Day relied to substantiate its claim opined that "Black Carbon" was found in the samples the hygienist collected from the allegedly smoke damaged goods, but did not opine whether such "ash, char materials or fugitive dust" reportedly observed were related to the fire.

121. Based on the foregoing, Day To Day has failed to demonstrate that the allegedly smoke-damaged goods sustained physical loss or damage within the meaning of the marine cargo policy.

122. The expert chemists that Liberty engaged found that the samples collected of Day To Day's goods collected from the warehouse were not physically damaged by the alleged exposure to smoke.

123. Day To Day failed to segregate and/or otherwise mitigate it damages from the allegedly smoke damaged goods stored inside the warehouse by, among other things, segregating damaged from undamaged goods, and/or cleaning or repackaging damaged boxes and/or cartons.

124. Day To Day failed to substantiate the quantity and value of the goods it alleges were damaged by smoke inside the warehouse.

125. Day To Day did not and has not substantiated its loss for the goods allegedly damaged and stored outside of the warehouse and/or in the open yard at the warehouse facility.

126. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled to coverage under the subject marine cargo policy for the claimed smoke damage to goods stored at the warehouse as a result of the fire.

**AS AND FOR ITS FOURTH CAUSE OF ACTION**

127. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "126" of this Complaint as if fully set forth herein.

128. Day To Day seeks payment under the subject marine cargo policy for goods allegedly loaded into trailers which were intended for delivery to customers within the United States and which were allegedly damaged and/or destroyed in the fire on September 30, 2021.

129. At the time of the fire, these trailers were static and had not yet been attached to a tractor and/or had not yet commenced transit.

130. Day To Day seeks coverage for these goods under the Domestic Transit Coverage Endorsement in the subject marine cargo policy.

131. Domestic transit coverage under the subject marine cargo policy for the goods allegedly in the trailers only would have attached to goods after the goods commenced transit.

132. By virtue of the forgoing, no domestic transit coverage attached to the goods allegedly in trailers and therefore, Day To Day cannot recover for this part of the loss under the subject marine cargo policy or at law.

**AS AND FOR ITS FIFTH CAUSE OF ACTION**

133. Plaintiff repeats and realleges its allegations contained in paragraphs “1” through “132” of this Complaint as if fully set forth herein.

134. Day To Day seeks payment under the subject marine cargo policy for goods allegedly remaining in sea containers after delivery of the containers to the outside yard of the warehouse designated in the trucker’s bills of lading as the destination, which were allegedly damaged or destroyed in the fire of September 30, 2021.

135. At the time of the fire, the subject sea containers had arrived at and had been accepted by the insured at the final destination designated in the trucker’s bills of lading.

136. The ocean transit coverage under the subject marine cargo policy, including the Consolidation/Deconsolidation clause, terminated upon delivery of the containers to the outside yard of the warehouse.

137. By virtue of the foregoing, the ocean transit coverage under the subject marine cargo policy for the goods allegedly remaining in the sea containers terminated prior to the fire on September 30, 2021, and therefore, Day To Day cannot recover for this part of the alleged loss under the subject marine cargo policy or at law.

**AS AND FOR ITS SIXTH CAUSE OF ACTION**

138. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "137" of this Complaint as if fully set forth herein.

139. Day To Day has made a demand upon Liberty for coverage for alleged damage to the contents of all pallets that allegedly sustained fire and/or water damage stored in the warehouse located at 16325 South Avalon Boulevard, Gardena, California at the time of the aforementioned fire.

140. The marine cargo policy and the common law imposes a duty upon Day To Day to mitigate its damages and loss, act as a prudent uninsured, and segregate damaged from undamaged goods. The Partial Loss clause (Clause 35) in the marine cargo policy provides:

> PARTIAL LOSS
>
> In case of partial loss or damage resulting from a peril insured against hereunder, the proportion of loss shall be determined by separation of damaged and undamaged goods and comparison of the values of the sound and damaged goods at the same time and place using all reasonable efforts to protect the undamaged merchandise from loss or damage.
>
> The amount of loss shall be:
>
> i. an agreed (by surveyor) percentage of depreciation applied to the insured value, or, if such agreement is not practicable,
>
> ii. then by public sale of the damaged goods, in which event the amount of loss shall be the difference between the insured value of the goods sold and the proceeds of sale.

141. Day To Day breached the foregoing duties by failing to segregate the goods on fire- and/or water-damaged pallets (as opposed to the whole pallet) between damage and undamaged goods.

142. The segregation of damaged from undamaged goods that Liberty undertook through a third-party salvor established that the goods Day To Day claimed were totally damaged was overstated and included sound goods.

143. As a result of Day To Day's breach of its duties to segregate damaged goods from undamaged goods, Day To Day is not entitled to coverage under the marine cargo policy.

144. Day To Day failed to substantiate the quantity and value of the goods it alleges were damaged by fire and/or water inside the warehouse.

145. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled to coverage under the subject marine cargo policy for the claimed contents of all pallets that allegedly sustained fire and/or water damage stored in the warehouse at the time of the fire.

**AS AND FOR ITS SEVENTH CAUSE OF ACTION**

146. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "145" of this Complaint as if fully set forth herein.

147. Day To Day has made a demand upon Liberty for coverage for alleged damages and losses to goods stored at, or liabilities arising in connection with, the warehouse located at 16325 South Avalon Boulevard, Gardena, California that was subjected to the aforementioned fire.

148. The marine cargo policy distinguishes between physical damage to the goods themselves and damage to their packaging and smoke or water damage to the packaging and labels is not a demonstration of physical damage to the goods. The Labels Clause (Clause 33) in the marine cargo policy provides:

> LABELS CLAUSE
>
> In case of damage affecting labels, capsule or wrappers, The Company, if liable therefore under the terms of this policy,

> shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules, or wrappers and the cost of reconditioning the insured goods.
>
> In no event shall The Company be liable for more than the insured value of the damaged merchandise.

149. To the extent Day To Day's claim is for damage to the labels, capsule or wrappers, and not physical damage to the goods themselves, then the marine cargo policy only provides coverage for the amount sufficient to pay the cost of new labels, capsules, or wrappers and the cost of reconditioning the insured goods.

150. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled coverage in excess of the amount sufficient to pay the cost of new labels, capsules, or wrappers and the cost of reconditioning the insured goods, to the extent such labels, capsules, or wrappers sustained physical loss or damage within the meaning of the subject marine cargo policy.

**AS AND FOR ITS EIGHTH CAUSE OF ACTION**

151. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "150" of this Complaint as if fully set forth herein.

152. Day To Day has made a demand upon Liberty for coverage for alleged damages and losses to goods stored at, or liabilities arising in connection with, the warehouse located at 16325 South Avalon Boulevard, Gardena, California that was subjected to the aforementioned fire.

153. The marine cargo policy excludes losses dues to loss of market or delay. The Delay And Inherent Vice clause (Clause 40) in the marine cargo policy provides:

> DELAY AND INHERENT VICE
>
> This policy is warranted free from claims for loss of market or loss, damage, deterioration, and expense arising from delay, whether

> caused by a peril insured against or otherwise, including from inherent vices (or nature) of the insured good(s) itself.

154. To the extent Day To Day's claim arises from loss of market or loss and/or damage, deterioration, and expense arising from delay, then the marine cargo policy excludes Day To Day's claim.

155. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled coverage for any claimed loss or damage arising from loss of market or loss and/or damage, deterioration, and expense arising from delay.

**AS AND FOR ITS NINTH CAUSE OF ACTION**

156. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "155" of this Complaint as if fully set forth herein.

157. On December 29, 2021, Day To Day advised Liberty that Liberty Property Limited Partnership and/or Prologis, Inc. had terminated Day To Day's warehouse agreement and Day To Day was required to vacate the warehouse located at 16325 South Avalon Boulevard, Gardena, California by January 31, 2022.

158. On December 29, 2021, Day To Day further advised Liberty that Day To Day intended to abandon the goods at the warehouse and wrote: "If Liberty Mutual does not pay on the loss or otherwise take steps to remove the Fire Damaged Goods to attempt to gain salvage, the Insureds will leave them at the Premises."

159. Day To Day has a duty to act as a prudent uninsured and otherwise prevent the abandonment of the goods.

160. Day To Day has breached its duties by failing to prevent the abandonment of the goods.

161. The marine cargo policy imposes a duty upon Day To Day to sue and labor for defense and safeguarding of the goods insured. The Sue And Labor clause (Clause 29) provides:

> SUE AND LABOR
>
> In case of any loss or misfortune, it shall be lawful and necessary to and for The Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods insured, or any part thereof, without prejudice to this insurance.

162. Day To Day's intentional abandonment of the goods at the warehouse constitutes a breach of the Sue And Labor Clause.

163. Day To Day's intentional abandonment of the goods does not constitute a fortuitous event as required and within the meaning of the marine cargo policy.

164. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled coverage for any claimed loss or damage arising from Day To Day's intentional abandonment of the goods.

**AS AND FOR ITS TENTH CAUSE OF ACTION**

165. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "164" of this Complaint as if fully set forth herein

166. Defendants Liberty Property Limited Partnership and Prologis, Inc. have demanded "all applicable insurance policy benefits" under the subject marine cargo policy.

167. The insureds under the marine cargo policy are Defendants Day To Day Imports Inc., Oxgord Inc., and Stanzino Inc.

168. Defendants Liberty Property Limited Partnership and Prologis, Inc. are not insured under the subject marine cargo policy.

169. No provision in the subject marine cargo policy affords coverage to Defendants Liberty Property Limited Partnership and Prologis, Inc.

170. To the extent Defendants Liberty Property Limited Partnership and Prologis, Inc. were entitled to coverage under the subject marine insurance policy, such claim is precluded and/or excluded for the reasons set forth above precluding or excluding coverage for Day To Day.

171. Based upon the foregoing, Liberty is entitled to a declaration that Defendants Liberty Property Limited Partnership and Prologis, Inc. are not entitled to any coverage under the subject marine cargo policy.

**AS AND FOR ITS ELEVENTH CAUSE OF ACTION**

172. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "171" of this Complaint as if fully set forth herein.

173. The Defendants have made a demand upon Liberty for coverage for alleged damages and losses to goods stored at, or liabilities arising in connection with, the warehouse located at 16325 South Avalon Boulevard, Gardena, California that was subjected to the aforementioned fire.

174. The terms and conditions of the subject marine cargo policy, which are incorporated herein as if fully set forth, preclude and/or otherwise exclude the claimed losses and damage claimed by the Defendants.

175. Based upon the foregoing, Liberty is entitled to a declaration that the Defendants are not entitled to coverage under the subject marine cargo policy for the claimed damaged and losses.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered as follows:

(i) against the Defendants and in favor of Plaintiff on each of its causes of actions and the claims therein set forth above;

(ii) against the Defendants and in favor of Plaintiff declaring the Defendants are not entitled to indemnification under the subject "Marine Cargo Policy," assigned policy number NYOMC11625401, Liberty Mutual Insurance Company issued;

(iii) against Defendant Day To Day;

(iv) awarding to Plaintiff its costs and fees; and

(v) for such other and further relief this Court may deem just, equitable, and proper.

Dated: March 16, 2022
New York, New York

Respectfully submitted,

NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff Liberty Mutual Ins. Co.*

By: s/John A.V. Nicoletti

John A.V. Nicoletti, Esq.
William M. Fennell, Esq.
Patrick C. Nolan, Esq.
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
Tel: 212-220-3830
E-mail: JNicoletti@NicolettiHornig.com
Reference No.: 40001296