

**EXHIBIT 2**

October 13, 2021

**VIA EMAIL (oscar@apexadjusters.com)**

Day To Day Imports, Inc.
c/o Mr. Oscar Munguia
Apex Public Adjusters, Inc.
550 N. Brand Blvd., Suite 950
Glendale, CA 91203

Re:  *Warehouse Yard Fire*
      Insured:    Day To Day Imports, Inc. et al.
      Location:    16325 South Avalon Blvd., Gardena, CA
      DOL:    Sept. 30, 2021
      Your Claim #: 5023-10052021
      LM Claim #:   NEWCAR000350193
      LM Policy#:   NYOMC11625401

Dear Mr. Munguia:

    Liberty Mutual Insurance Company ("Liberty") previously acknowledged receipt of the claim by Day To Day Imports, Inc. ("Day To Day") for damage to its stored goods as a result of a fire on September 30, 2021, at 16325 South Avalon Boulevard, Gardena, California. Liberty further acknowledged receipt of the Notice of Representation purportedly executed by Day To Day, which indicates that Apex Public Adjusters represents the insured. Liberty also received notification that Mark Kremer, Esq. represents the insured and there has been no indication that Mr. Kremer has been discharged or withdrawn. Therefore, Liberty write to you with Mr. Kremer in copy.

    Day To Day seeks coverage under the Marine Cargo Policy that Liberty issued to Day To Day for the one-year period commencing December 20, 2020, and assigned policy number NYOMC11625401 (the "Policy"). For the reasons more fully set forth below, and based upon the information presently available, Liberty partially denies Day To Day's claim and, to the extent not denied, fully reserves its rights with respect to coverage under the Policy for the claim.

Liberty presumes your familiarity with the fire that occurred on September 30, 2021, at the warehouse located at 16325 South Avalon Boulevard, Gardena, California and which gives rise to the subject claim. The cause and origin of the fire is presently unknown to Liberty. For present purposes, Liberty notes that its understanding is that a large portion of Day To Day's goods were stored outside and/or in the open at the yard for the warehouse. The fire occurred at the yard and the entry of fire into the warehouse was very limited (and confined to the loading/unloading doors at the warehouse). On October 4, 2021, the surveyor observed that virtually all goods stored on their customary storage racks in the warehouse appeared to be in good visible condition. Near the loading/unloading doors, the surveyor observed some pallets that have limited fire and smoke damage and some of which appear to have been subjected to foam/water to extinguish burnt products.

Liberty understands that Day To Day's goods at the warehouse were varied, as was their packaging, but consisted mostly of skin and body care products. The surveyor returned to the warehouse on October 8, 2021, at the request of Day To Day to visually observe the insured's goods in the interior of the warehouse. Expert chemist Dr. Court Sandau (and his colleagues) will obtain samples of the insured's goods located inside the warehouse for future testing and/or analysis.

If Liberty's understanding of the foregoing is incorrect or incomplete, then please advise us and provide relevant documentation.

## **INSURANCE TERMS & CONDITIONS**

Although Liberty is continuing to investigate this matter, it has made a coverage determination respecting a portion of Day To Day's claim based upon the available information. In particular, Liberty has determined that Day To Day's goods stored outside the warehouse and/or in the open are excluded from coverage under the Policy.

The Policy generally provides coverage for shipments of lawful, properly packaged goods and/or merchandise, consisting principally of "pet accessories, auto accessories, household cleaning products and soaps, ladders, [and] hand sanitizer." The Warehouse Storage Coverage Endorsement extends coverage for Day To Day's goods temporarily stored in stores or warehouses approved by Liberty. Liberty previously approved the subject warehouse located 16325 South Avalon Boulevard, Gardena, California, which is included on Endorsement No. 5, the Warehouse Schedule And/Or Deductible Amendment Endorsement. The limit of liability for the warehouse is $15,000,000 and a deductible of $10,000 per occurrence applies for covered losses at that location.

The Warehouse Storage Coverage Endorsement provides coverage against all risks of physical loss or damage from any external cause subject to the Perils / Property Exclusions in the Endorsement and subject always to the other terms and conditions in the Policy. Paragraph "L" of the Perils / Property Exclusions provides, in relevant part, that coverage under the endorsement does not insure "*Property stored outside or in the open*." Based upon the plain and unequivocal exclusion in the Warehouse Storage Coverage Endorsement, Day To Day's goods that were stored outside the warehouse or in the open

and damaged or destroyed by the fire are excluded from coverage. Accordingly, Liberty must decline Day To Day's claim to the extent it includes any such goods.

Because Day To Day's goods stored outside of the warehouse or in the open are not insured under the Policy, the Policy similarly does not cover any debris removal expenses Day To Day incurred or incurs to remove and/or dispose of such goods. In this regard, the Debris Removal clause in the Policy provides:

> This policy is extended to cover expenses incurred by The Insured for the *obligatory removal and disposal of all debris of the goods insured under this policy* or for its destruction which may be occasioned by loss by any of the perils insured under this policy while the goods insured are in the ordinary course of transit in accordance with the warehouse to warehouse and marine extension clause, except that The Company shall not be liable under this clause for more than 10% of the insured value of the shipment.

Under circumstances where Day To Day's goods are insured under the Policy, Liberty will give due consideration to any claim by Day To Day for its obligatory removal and disposal of debris of the goods. As previously noted in Liberty's correspondence, the limit of liability for covered debris removal costs is 10% of the insured value of the shipments at issue. Please note that Day To Day's goods stored outside of the warehouse will not be factored into the value of the shipments at issue for purposes of calculating the 10% limit of liability.

With respect to Day To Day's goods stored *inside* the warehouse, Liberty must and hereby does continue to reserve its rights. All prior reservations by Liberty are incorporated herein and made a part hereof. Liberty advised Day To Day to act as a prudent uninsured, which includes the insured's duty to mitigate its losses. In conjunction with the insured's duty to mitigate, the Policy obligates Day To Day to separate damaged and undamaged goods. In particular, the Policy provides:

> 35.   PARTIAL LOSS
>
> In case of partial loss or damage resulting from a peril insured against hereunder, the proportion of loss shall be determined by separation of damaged and undamaged goods and comparison of the values of the sound and damaged goods at the same time and place using all reasonable efforts to protect the undamaged merchandise from loss or damage.
>
> The amount of loss shall be:

>   i.   an agreed (by surveyor) percentage of depreciation applied to the insured value, or, if such agreement is not practicable,
>
>   ii.   then by public sale of the damaged goods, in which event the amount of loss shall be the difference between the insured value of the goods sold and the proceeds of sale.

Consequently, it is Liberty's expectation that Day To Day will begin segregating damaged and undamaged goods — in consultation with the surveyor — promptly after the sample collection is completed. To the extent Day To Day disagrees, then please advise Liberty and provide us with the grounds upon which Day To Day relies for its decision.

Liberty has given consideration to the Control of Damaged Goods clause (paragraph 32 of Section 1 of the Policy). To the extent the Control of Damaged Goods clause applies to the coverage afforded under the Warehouse Storage Coverage Endorsement to the Policy, the clause is triggered only "if finished goods insured hereunder that are intended for sale by The Insured are *physically* damaged by a risk insured. . . ." As noted above, the surveyor initially observed that virtually all goods stored on their customary storage racks in the warehouse appeared to be in good visible condition. Thus, in the absence of physical damage to the insured goods, the Control of Damaged Goods clause is not triggered. Therefore, Liberty must reserve its rights as to the application of the Control of Damaged Goods clause to Day To Day's claim.

The Policy distinguishes between physical damage to the goods themselves and damage to their packaging. Smoke or water damage to the packaging and labels is not a demonstration of physical damage to the goods. Where there is damage to the packaging or labels, the Policy provides:

>   33.   LABELS CLAUSE
>
>   In case of damage affecting labels, capsule or wrappers, The Company, if liable therefore under the terms of this policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules, or wrappers and the cost of reconditioning the insured goods.
>
>   In no event shall The Company be liable for more than the insured value of the damaged merchandise.

Liberty acknowledges that some portion of goods in the warehouse appear to have sustained direct fire damage. However, the segregation of the goods Day To Day is obligated to undertake (as stated above) is necessary before Liberty can determine which goods were physically damaged, which goods are sound, and which may be in dispute. Liberty has also retained forensic accountants to assist in quantifying and valuing any

goods mutually deemed to have sustained physical damage. Consequently, no payment is due at this time because Day To Day has not substantiated its loss and, therefore, all portions of the claim remain in dispute.

Liberty also takes this opportunity to address several points raised in your email correspondence on October 11, 2021. First and foremost, your reliance upon California insurance laws and regulations is inapposite. The Policy unambiguously provides that the rights and obligations under the Policy, which includes Day To Day's claim, is subject to federal maritime law and, in the absence of such law, New York law (where any disputes between the parties must also be resolved). Second, your reliance upon California Insurance Code § 2701 is doubly misplaced because it sets forth the California standard form fire insurance contract. The Policy is not a fire insurance contract, let alone the California standard fire insurance contract, but rather a marine cargo policy. Therefore, the Insurance Code section upon which you rely is inapplicable and, further, the subject Policy does not create any right of the insured to demand potentially protected claim documentation from Liberty. If you persist in such demand, then please provide us with the legal basis upon which you base your opinion that California law applies and provides Day To Day with the asserted right to all claim documentation from Liberty under the subject marine Policy.

You have also advised that Day To Day will have a hygienist attend the warehouse. Please provide us with proposed dates and times that your hygienist will collect samples so that Liberty may arrange to have a representative(s) present.

## REQUESTS FOR INFORMATION

In light of Liberty's retention of forensic accountants, additional requests for financial and inventory related documents is forthcoming from those forensic accountants. In the meanwhile, please provide us with an inventory of the goods you contend were inside the warehouse and damaged as a result of the fire. Additionally, we kindly remind you of Liberty's outstanding request for a copy of Day To Day's lease with the warehouse owner and/or operator.

The reason for Liberty's request for your retainer agreement is because whether the claim has been assigned to you (or any portion of it) is material information. As you may be aware, a post-loss assignment of first-party beneficiary rights and obligations is different than if your services are rendered to the insured based upon a fee agreement. If you and the insured are unwilling to provide your retainer agreement, then please advise whether Day To Day has assigned the claim, in whole or in part, and including without limitation any proceeds, to you, your organization, or any other third-party.

## CONCLUSION

In light of the foregoing, Liberty partially denies Day To Day's claim for indemnity. Nothing contained in this letter should be deemed a waiver of the terms and conditions of

the Policy, nor shall any acts or positions taken by Liberty (or its agents) be construed as creating an estoppel against Liberty for matters presently known or unknown. Liberty expressly reserves the right to amend or modify its position to assert other bases for denying coverage or reserving its rights, and to rely upon any term or condition in the Policy or any other ground, which may be found to limit or preclude coverage.

Please note that the excerpts of certain policy provisions set forth in this letter are provided to assist in your review of Liberty's coverage position. The positions set forth in this letter are based on all of the provisions of the Policy and not only on the excerpts cited above. Therefore, Liberty refers you to the Policy in its entirety to understand the provisions cited. Nothing in this letter is intended to modify the provisions of the Policy. To the extent cited provisions differ in any manner from the actual language of the Policy, the Policy language shall control. Further, inclusion of selected provisions of the Policy is not intended to, and does not, in any way limit or waive our right to rely upon additional provisions.

We look forward to receiving the additional requested information and your cooperation with the site inspection and sample collection. Thank you.

Yours faithfully,

*Laurent Coussa*

Laurent Coussa
Claims Manager - Marine Cargo
Liberty Mutual Insurance

**cc (via email):**

Mark D. Kremer, Esq.
Conkle, Kremer & Engel, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, CA 90403
Email: m.kremer@conklelaw.com