UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>-against-<br><br>DAY TO DAY IMPORTS INC., OXGORD INC., AND STANZINO INC.,<br><br>Defendants. | Case No.: 1:22-cv-2181-AT<br><br><br><br>**ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |
| DAY TO DAY IMPORTS INC., OXGORD INC., AND VIRGIN SCENT INC.<br><br>Counterclaimants,<br><br>-against-<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Counter-Defendant. | |

Defendants, DAY TO DAY IMPORTS INC., OXGORD INC. and STANZINO INC., by their attorneys RUBIN, FIORELLA, FRIEDMAN & MERCANTE LLP, as and for their answer and affirmative defenses to Plaintiff's Amended Complaint:

1.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Amended Complaint.

2.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Amended Complaint.

3.    Admitted.

0619.003\9983

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted that Defendants sometimes use or associate with the fictitious business name "Art Naturals." Except as specifically admitted, deny the remaining allegations in paragraph 9 of the Amended Complaint.

10.     Admitted that Defendants Day to Day Imports Inc. and Oxgord Inc. are affiliated business entities. Except as specifically admitted, deny the remaining allegations in paragraph 10 of the Amended Complaint.

11.     Admitted that Defendants Day to Day Imports Inc. and Oxgord Inc. were engaged in the business of selling range of consumer products, including but not limited to pet accessories, auto accessories, household cleaning products and soaps, hand sanitizers and other merchandise. Except as specifically admitted, deny the remaining allegations in paragraph 11 of the Amended Complaint.

12.     Admitted that Oak Tree acted as an insurance broker on behalf of Defendants. Except as specifically admitted, deny the remaining allegations in paragraph 12 of the Amended Complaint.

**ANSWERING JURISDICTION AND VENUE**

13.     Admitted that Plaintiff issued Marine Cargo Policy No. NYOMC11625401 (the "Policy") to Defendants under which Policy Plaintiff has refused and continues to refuse to honor claims. Except as specifically admitted, deny the remaining allegations of paragraph 13.

14.     The allegations in paragraph 14 are allegations of law to which no response is required. To the extent a response should be deemed necessary, the allegations are denied.

15.     The allegations of paragraph 15 are allegations of law to which no response is required. To the extent a response should be deemed required, the allegations are denied.

16.     The allegations in paragraph 16 are allegations of law to which no response is required. To the extent a response should be deemed necessary, the allegations are denied.

17.     The allegations in paragraph 17 are allegations of law to which no response is required. To the extent a response should be deemed necessary, the allegations are denied.

## STATEMENT OF THE CLAIM

18.     Admitted that Oak Tree Insurance Services LLC acted as an insurance broker on behalf of Defendants. Except as specifically admitted, deny the remaining allegations of paragraph 18.

19.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Amended Complaint.

20.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Amended Complaint.

21.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Amended Complaint.

22.     Admitted that Plaintiff issued the Policy. Except as specifically admitted, Deny the remaining allegations in paragraph 22 of the Amended Complaint.

23.     Admitted that Plaintiff issued the Policy and refer this Honorable Court to the terms and conditions of the Marine Cargo Policy for the content thereof.

24.     Admitted that Oak Tree acted as an insurance broker on behalf of Defendants. Except as specifically admitted, deny the remaining allegations in paragraph 24 of the Amended Complaint.

25.     Admitted that Plaintiff issued the Policy and refer this Honorable Court to the terms and conditions of the Policy for the content thereof.

26.     Admitted that Plaintiff issued the Policy and refer this Honorable Court to the terms and conditions of the Policy for the content thereof.

27.     The allegations in paragraph 27 are allegations of law to which no response is required. To the extent a response should be deemed necessary, the allegations are denied.

28.     Admitted that Plaintiff issued the Policy and refer this Honorable Court to the terms and conditions of the Policy for the content thereof.

29.     Admitted that Plaintiff issued the Policy and refer this Honorable Court to the terms and conditions of the Policy for the content thereof.

## THE FIRE AND DAY TO DAY'S CLAIMS

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Amended Complaint.

32.     Admitted that the subject warehouse stored goods on behalf of Day to Day Imports Inc., Oxgord Inc. and others. Except as specifically admitted, deny the remaining allegations in paragraph 32 of the Amended Complaint

33.     Admitted.

34.     Admitted.

35.     Admitted that Day to Day Imports Inc. and Oxgord Inc., as well as Virgin Scent Inc., owned or had a proprietary interest in goods at the subject warehouse. Except as specifically admitted, deny the remaining allegations in paragraph 35 of the Amended Complaint.

36.     Admitted that the fire was mostly in the yard outside the warehouse, and that fire and smoke entered the warehouse through loading bay doors. Except as specifically admitted, deny the remaining allegations in paragraph 36 of the Amended Complaint.

37.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Amended Complaint.

38.     Admitted that Day To Day Imports Inc., Oxgord Inc. and Virgin Scent, Inc. owned or had a proprietary interest in goods inside the warehouse. Except as specifically admitted, deny the remaining allegations in paragraph 38 of the Amended Complaint.

39.     Admit that some goods were in pallets, cartons, and/or boxes inside the subject warehouse at the time of the fire. Except as specifically admitted, deny the remaining allegations in paragraph 39 of the Amended Complaint.

40.     Admit that at the time of the fire, some goods were in retail boxes within cartons that were placed on pallets which had shrink-wrap. Except as specifically admitted, deny the remaining allegations in paragraph 40 of the Amended Complaint.

41.     Admitted.

42.     Admitted.

43.     Admit that Defendants Day To Day Imports Inc. and Virgin Scent Inc. appointed Apex Public Adjusters to assist in presenting its claim for damage to Plaintiff. Except as specifically admitted, deny the remaining allegations in paragraph 43 of the Amended Complaint.

44.     Deny.

45.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Amended Complaint.

46.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Amended Complaint.

47.     Admit that on October 1, 2021 Plaintiff acknowledged receipt of the first notice of claim and advised of the appointment of a surveyor.

48.     Admitted.

49.     Denied.

50.     Admit that Plaintiff requested that Defendants provide a value of inventory damaged by the fire. Except as specifically admitted, Deny the remaining allegations in paragraph 50 of the Amended Complaint.

51.     Admit that Day To Day Imports Inc. requested Plaintiff's surveyor to inspect goods damaged by the fire jointly with Day to Day's representative. Except as specifically admitted, deny the remaining allegations in paragraph 51 of the Amended Complaint.

52.     Admitted that Plaintiff's surveyor conducted an alleged further survey of goods damaged by the fire on or about October 8, 2021. Except as specifically admitted, Deny the remaining allegations in paragraph 52 of the Amended Complaint.

53.     Denied.

54.     Denied.

55.     Admitted that Plaintiff requested Day To Day Imports Inc. to segregate damaged from undamaged goods. Except as specifically admitted, Deny the remaining allegations in paragraph 55 of the Amended Complaint.

56.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Amended Complaint.

57.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Amended Complaint.

58.     Admitted.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Admitted that Defendants agreed to permit removal of the damaged goods from the warehouse for inspection. Except as specifically admitted, Deny the remaining allegations in paragraph 62 of the Amended Complaint.

63.     Denied.

64.     Denied.

65.     Admitted that Defendants provided financial documentation in support of their claim.

66.     Admitted that Plaintiff paid $250,000.  Except as specifically admitted, deny the remaining allegations in paragraph 66 of the Amended Complaint.

67.     Admitted that Plaintiff paid $16,400.  Except as specifically admitted, deny the remaining allegations in paragraph 67 of the Amended Complaint.

**<u>DAY TO DAY'S CLAIM FOR SMOKE DAMAGED GOODS</u>**

68.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Amended Complaint.

69.     Admitted that a third party allegedly appointed by Liberty Mutual took samples of goods. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 of the Amended Complaint.

70.     Denied.

71.     Denied.

72.     Admitted that Defendants permitted Plaintiff to collect samples. Except as specifically admitted, deny the remaining allegations of paragraph 72 of the Amended Complaint.

73.     Denied.

## DAY TO DAY'S GOODS STORED OUTSIDE AND/OR IN THE YARD

74.     Admitted that Plaintiff issued a partial declination of coverage refusing to pay Defendants' claim. Except as specifically admitted, deny the remaining allegations of paragraph 74 of the Amended Complaint.

75.     Admitted that Plaintiff issued through Exhibit 2 to the Amended Complaint a partial declination of coverage refusing to pay Defendants' claim. Except as specifically admitted, deny the remaining allegations of paragraph 75 of the Amended Complaint.

## ANSWERING FIRST CAUSE OF ACTION

76.     Defendants repeat and reallege their answers to the allegations in paragraphs 1 through 75 of this answer as is fully set forth herein.

77.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 77 of the Amended Complaint.

78.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 78 of the Amended Complaint.

79.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 79 of the Amended Complaint.

80.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 80 of the Amended Complaint.

81.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 81 of the Amended Complaint.

82.     Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 82 of the Amended Complaint.

83.     Denied.

84.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 84 of the Amended Complaint.

85.     Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 85 of the Amended Complaint.

86.     Denied.

87.     Denied.

88.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 88 of the Amended Complaint.

89.     Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 89 of the Amended Complaint.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

## ANSWERING SECOND CAUSE OF ACTION

95.     Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 94 of this answer as is fully set forth herein.

96.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 96 of the Amended Complaint.

97.     Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 97 of the Amended Complaint.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

## ANSWERING THIRD CAUSE OF ACTION

102.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 101 of this answer as is fully set forth herein.

103.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 103 of the Amended Complaint.

104.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 104 of the Amended Complaint.

105.    Admit that Defendants stated they were "evaluating the condition of the goods within the warehouse for condition of salability and will advise." Except as specifically admitted, deny the remaining allegations of paragraph 105 of the Amended Complaint.

106.    Denied.

107.    Admit Defendants hired American Environmental Group to assist in evaluation of goods damaged in the fire. Except as specifically admitted, deny the remaining allegations of paragraph 107 of the Amended Complaint.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

## ANSWERING FOURTH CAUSE OF ACTION

117.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 116 of this answer as is fully set forth herein.

118.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 118 of the Amended Complaint.

119.    Denied.

120.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 120 of the Amended Complaint.

121.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 121 of the Amended Complaint.

122.    Denied.

## ANSWERING FIFTH CAUSE OF ACTION

123.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 122 of this answer as is fully set forth herein.

124.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 124 of the Amended Complaint.

125.    Denied.

126.    Denied.

127.    Denied.

## ANSWERING SIXTH CAUSE OF ACTION

128.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 127 of this answer as is fully set forth herein.

129.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 129 of the Amended Complaint.

130.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 130 of the Amended Complaint.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

## ANSWERING SEVENTH CAUSE OF ACTION

136.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 135 of this answer as is fully set forth herein.

137.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 137 of the Amended Complaint.

138.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 138 of the Amended Complaint.

139.    Denied.

140.    Denied.

## ANSWERING EIGHTH CAUSE OF ACTION

141.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 140 of this answer as is fully set forth herein.

142.    Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 142 of the Amended Complaint.

143.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 143 of the Amended Complaint.

144.    Denied.

145.    Denied.

## ANSWERING NINTH CAUSE OF ACTION

146.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 145 of this answer as is fully set forth herein.

147.    Admit that Defendants advised Plaintiff that Defendants were required to vacate the warehouse located at 16325 South Avalon Boulevard, Gardena, California by January 31, 2022. Except as specifically admitted, Deny the remaining allegations in paragraph 147 of the Amended Complaint.

148.    Admitted that Day To Day informed Plaintiff that "Absent payment by Liberty Mutual of the loss, the Insureds do not have the financial means to remove the Fire Damaged Goods from the Premises. If Liberty Mutual does not pay on the loss or otherwise take steps to remove the Fire Damaged Goods to gain salvage, the Insureds will leave them at the Premises." Except as specifically admitted, deny the remaining allegations of paragraph 148 of the Amended Complaint.

149.    Denied.

150.    Denied.

151.    Defendants refer this Honorable Court to the Policy for the terms and conditions set forth therein. Except as specifically admitted, Deny the remaining allegations in paragraph 151 of the Amended Complaint.

152.    Denied.

153.    Denied.

154.    Denied.

## ANSWERING TENTH CAUSE OF ACTION

155.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 154 of this answer as is fully set forth herein.

156.     Admitted that Defendants made a claim under the Policy issued by Plaintiff, which Plaintiff refused and continues to refuse to pay. Except as specifically admitted, Deny the remaining allegations in paragraph 156 of the Amended Complaint.

157.     Denied.

158.     Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

159.     The Amended Complaint fails to state a cause of action or a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
### (FAILURE TO CARRY BURDEN)

160.     The Amended Complaint fails, in whole or in part, because the Policy covers Defendants' loss and Plaintiff has put forth no evidence to carry its burden to establish application of their coverage defenses.

### THIRD AFFIRMATIVE DEFENSE
### (BREACHES OF POLICY BY PLAINTIFF)

161.     Defendants are entitled to coverage for the loss or damage alleged in the Amended Complaint by virtue of Plaintiff's breaches of the terms, conditions, exclusions, warranties and limitations contained in the Policy.

### FOURTH AFFIRMATIVE DEFENSE
### (ESTOPPEL)

162.     The Amended Complaint should be dismissed pursuant to the equitable doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**
**(UNCLEAN HANDS)**

163.    The Amended Complaint should be dismissed pursuant to the equitable doctrine of unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**
**(BAD FAITH)**

164.    Plaintiff's claims are barred by its bad faith claims handling.

**SEVENTH AFFIRMATIVE DEFENSE**
**(LACK OF SUBJECT MATTER JURISDICTION)**

165.    Plaintiff's claims lack subject matter jurisdiction due to the existence of indispensable parties whose participation would destroy complete diversity.

**COUNTERCLAIMS**

166.    Counterclaimants Day to Day Imports Inc. ("Day to Day"), Oxgord Inc. ("Oxgord"), and Virgin Scent, Inc. d/b/a Art Naturals ("Virgin Scent") (collectively, "Day To Day"), by and through their attorneys, as and for their Counterclaims against Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual" or "Plaintiff"), allege the following upon information and belief:

**THE PARTIES**

167.    Day to Day is a California corporation with a principal place of business in California.

168.    Oxgord is a California corporation with a principal place of business in California.

169.    Virgin Scent is a California corporation with a principal place of business in California.

170.    Upon information and belief, Liberty Mutual is a Massachusetts stock insurance company with its principal place of business in Boston, Massachusetts and is in the business of underwriting marine insurance contacts and is authorized to issue insurance policies in the State of California.

## JURISDICTION

171.    This is an action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 - 2202, for the purpose of determining a question of actual controversy between the parties under a policy of marine cargo insurance, as it involves a dispute over the terms and conditions of maritime contracts.

172.    Subject to the potential for an indispensable party to be added that could defeat jurisdiction, as pleaded in the affirmative defenses, at present this case is within the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. To the extent that Day To Day asserts any claim not within this Court's original jurisdiction, such claims are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

173.    Venue is proper in this district pursuant to the terms and conditions of the policy of marine cargo insurance that is subject to this dispute.

## NATURE OF THE ACTION

174.    This is an action for a declaration that coverage under Marine Cargo Policy NYOMC11625401 underwritten by Liberty Mutual to Day To Day (the "Cargo Policy") exists for damage to shipments of goods and/or merchandise destroyed or damaged during a fire, which occurred on September 30, 2021 at an insured warehouse at 16325 South Avalon Boulevard, Gardena, California.

175.    The Cargo Policy was issued to insure shipments of goods, including pet accessories, auto accessories, household cleaning products and soaps, ladders, and hand sanitizers belonging to Day To Day (the "Insured Goods") against "**all risks of physical loss or damage from any external cause**" from the time the goods leave the warehouse and/or place of commencement of transit and continues through the ordinary course of transit, including transshipment and until the goods are delivered to the final destination. (**Cargo Policy – Goods Insured, Insuring Conditions, Warehouse to Warehouse and Marine Extension Clause**).

176.    The Cargo Policy provides in part:

12.  **INSURING CONDITIONS**

The following terms set forth below are applicable to Clause 12(b), 12(c), and 12(d):
i.  This insurance subject to its terms covers while on docks, wharves or elsewhere on shore and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, … These perils are referred to as "**Shore Perils**".

**15.  WAREHOUSE  TO  WAREHOUSE  AND  MARINE  EXTENSION CLAUSE**

(a)  This insurance attaches from the time the insured goods leave the warehouse and/or place named in the policy for the commencement of transit and continues during the ordinary course of transit, including customary transhipment points, until the goods are delivered to the final warehouse at the destination named in the policy, certificate or declaration or a substitute destination as provided in sub-clause "15(c)" hereunder.
(b) This insurance specifically covers the goods during:

i. deviation, delay, forced discharge, reshipment and transhipment.

\*    \*    \*

**29. SUE AND LABOR**

In case of any loss or misfortune, it shall be lawful and necessary to and for The Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and

about the defense, safeguard and recovery of the goods insured, or any part thereof, without prejudice to this insurance.

The acts of The Insured or The Company, in recovering, saving and preserving the goods insured, in case of disaster, shall not be considered a waiver or an acceptance of an abandonment.

Subject always to the applicable limit of liability, sue and labor charges are payable irrespective of percentage.

* * *

## 56. DEBRIS REMOVAL

This policy is extended to cover expenses incurred by The Insured for the obligatory removal and disposal of all debris of the goods insured under this policy or for its destruction which may be occasioned by loss by any of the perils insured under this policy while the goods insured are in the ordinary course of transit in accordance with the warehouse to warehouse and marine extension clause, except that The Company shall not be liable under this clause for more than 10% of the insured value of the shipment. Nothing contained herein shall be construed to cover any expenses incurred in consequence of or to prevent or mitigate pollution or contamination hazards, or any threat or liability thereof or cleanup expenses for which The Insured may be liable under any pollution statute. Expenses recoverable under this clause shall be separate and in addition to the policy limits of liability set forth elsewhere herein.

## 57. EXTRA EXPENSE

Where by reason of a peril insured against under this policy, extra expenses are necessarily incurred to destroy, dump or otherwise dispose of the damaged goods, or where extra expenses are necessarily incurred in discharging from the vessel and/or craft and/or conveyance, such expenses will be recoverable in addition to the damage to the insured interest. Nothing contained herein shall be construed to cover any clean up expenses for which the Insured shall be liable under any pollution statute.

The Company shall not be liable under this clause for more than 10% of the insured value of the shipment.

177.    The Cargo Policy at **Section 2: Domestic Transit Coverage Endorsement**

provides, in part:

It is understood and agreed that the following terms and conditions are hereby made a part of the policy.

**1.        Property Insured**

This policy is hereby extended to cover property owned by the Insured, and similar property of others for which the Insured may be liable or is under obligation to insure.

**2.        Territorial Limits**

This endorsement covers insured property while in the ordinary course of transit by land or air within the continental limits of the United States and Canada.

**3.        Insuring Conditions**

This endorsement covers against all risks of physical loss or damage from any external cause irrespective of percentage, except the risks of war, strikes, riots and other risks excluded by the FC&S and SR&CC Warranties and by the Nuclear Exclusion Clause Paramount contained in this policy.

*   *   *

**11. Returned Domestic Shipments**

This insurance subject to all its terms and conditions is extended to cover property in domestic transit returned to the Insured for any reason providing the original shipment was insured hereunder.

178.    The Cargo Policy at **Section 3: Warehouse Storage Coverage Endorsement**

provides in part:

It is understood and agreed that the following terms and conditions are hereby made a part of this policy.

**1. Property Insured**

This endorsement is hereby extended to cover property owned by the Insured, and similar property of others for which the Insured is liable or is under obligation to insure, and for which the Insured may be liable in the event of loss while temporarily stored within the continental limits of the United States.

This insurance shall not attach with respect to any such place of storage, however, until the store or warehouse has been submitted to and approved by the Company and Company rates established therefore, or as otherwise provided by Clause 7 of this endorsement.

179.     The warehouse at 16325 South Avalon Blvd., Gardena, California (the "Gardena Warehouse") was submitted to and approved by Liberty Mutual and a rate was established therefore. *See* **Marine Cargo Policy Endorsement No. 5.**

180.     Day To Day has satisifed all conditions required of it under the Cargo Policy necessary to trigger coverage.

**The fire at the Gardena Warehouse**

181.     On or about September 30, 2021, a massive fire ("Fire") occurred at the Gardena Warehouse which took three days and two hundred firefighters to extinguish. Images of the Fire were captured by many live local news feeds.





182.    The Fire at the Gardena Warehouse damaged or destroyed a significant portion of Insured Goods stored in the Gardena Warehouse and Insured Goods outside of the Gardena Warehouse in the course of transit or transshipment.

183.    Because the Fire had most impact outside of the Gardena Warehouse, a significant percentage of Insured Goods damaged or destroyed were Insured Goods in the course of transit or transshipment located outside of the Gardena Warehouse.

184.    In addition to Insured Goods, which were damaged or destroyed by the Fire, the Fire also caused contamination of other Insured Goods which Insured Goods are not fit for sale or use, or that the costs to recondition, clean and replace labels or packaging exceed the value of said contaminated Insured Goods.

**Day To Day Submits a Property Loss Notice**

185.     On or about October 1, 2021, Day To Day timely submitted a Property Loss Notice to Liberty Mutual pursuant to the terms and conditions of and sought coverage for the extensive damages to the Insured Goods under the Cargo Policy. Subsequent to submitting the Property Loss Notice, Day To Day provided additional information regarding the loss to Liberty Mutual.

186.     On or about October 5, 2021, Day to Day retained Apex Public Adjusters to assist Day to Day with claims under the Policy arising from the Fire.

187.     Liberty Mutual appointed King Marine Surveying Company, Inc. (King) to conduct an initial inspection of the fire damaged and contaminated Insured Goods at the Gardena Warehouse. On or about October 4, 2021, the surveyor conducted only a cursory walk-through inspection of the Gardena Warehouse, without even inspecting the Insured Goods in the Warehouse. On or about October 6, 2021, King generated a report on behalf of Liberty Mutual regarding the October 4, 2021 "inspection," which stated, *inter alia*, "we have handled many claims when Public Adjusters are involved and they are always contentious. We recommend [Liberty Mutual] hire legal counsel."

188.     Because this initial survey was deficient, Day To Day was forced to request that Liberty Mutual conduct a second survey of the Insured Goods on October 8, 2021. This second survey was limited in large part to examination of Insured Goods stored inside the warehouse and confirmed that there were fire and water damaged Insured Goods inside the warehouse.

189.     Liberty Mutual appointed a chemist to obtain samples of goods from the warehouse.

190.     Day To Day sought coverage for the costs necessary to remove the fire and water damaged Insured Goods from the warehouse, which was required to enable recovery of operations

at the warehouse. Such coverage is afforded Day To Day pursuant to the terms and conditions of the Cargo Policy. **Cargo Policy: Sue and Labor and Debris Removal.**

191.     On or about October 10, 2021, Liberty Mutual's marine surveyor represented to Day To Day that Liberty Mutual would respond to Day to Day's request to arrange to remove the damaged Insured Goods from the Gardena Warehouse through a salvor company.

192.     Despite this representation that coverage exists under the Cargo Policy, Liberty Mutual failed and continues to refuse to provide coverage for removal of damaged Insured Goods from the Gardena Warehouse.

**Liberty Mutual Improperly Denied All Claims for Insured Goods Located Outside the Gardena Warehouse**

193.     The goods damaged outside of the warehouse were goods in transit or transshipment as those terms are defined in the Cargo Policy and thus these goods are within the Cargo Policy definition of "property insured". The value of these Insured Goods outside the warehouse is more than $72,000,000 pursuant to the valuation provisions of the Cargo Policy.

194.     Liberty Mutual's surveyor failed to inspect these goods on either of its visits to the Gardena Warehouse.

195.     Upon information and belief, because of the quantum of loss suffered by Day To Day with respect to these goods, Liberty Mutual decided to deny the claim without due cause and in breach of its obligations under the Cargo Policy.

196.     On or about October 11, 2021, and without adequate investigation or analysis, Liberty Mutual summarily and wrongfully denied coverage for loss and damage to all of the Insured Goods which were outside of the warehouse and denied Debris Removal coverage.

**Liberty Mutual Engages in Delay Tactics To Deny Accepted Claims**

197.    Liberty Mutual accepted coverage for loss or damage to Insured Goods stored in the Gardena Warehouse.

198.    Liberty Mutual has failed and refuses to pay the full amount of damages to the Insured Goods stored in the Gardena Warehouse.

199.    Instead, under the guise of investigating the quantum of loss, Liberty Mutual has delayed and failed to honor its obligations under the Cargo Policy.

200.    Liberty Mutual engaged a chemist based in Canada to obtain samples of Insured Goods stored in the Gardena Warehouse but failed to adequately advise Day To Day as to its obligations on this matter. Instead, Liberty Mutual manipulated this process to fabricate a claim that Day To Day failed to cooperate with Liberty Mutual's investigation.

201.    Day to Day also engaged an industrial hygienist to perform testing on samples of Insured Goods stored in the Gardena Warehouse. The report generated by the industrial hygienist, which was also sent to Liberty Mutual, found that all samples collected from the Insured Goods contained unacceptable levels of soot, char, and/or ash.

202.    Beginning in mid-October 2021, pursuant to the terms of the Policy, Day to Day made multiple requests to Liberty Mutual to hire a salvor company to remove the destroyed and/or damaged Insured Goods to determine the scope of the damages, as well as to enable resumed warehouse operations. Liberty Mutual continually declined and/or ignored Day to Day's request for nearly two months, until early December of 2021, when removal of the damaged and/or destroyed Insured Goods for finally began.

203.    After the Insured Goods were removed by the salvor appointed by Liberty Mutual, the salvor generated a report showing over $800,000.00 in losses of Insured Goods inside the Gardena Warehouse. In response, Liberty Mutual offered a mere $36,000.00.

### Liberty Mutual's Intentional Delay and Unfair Business Practices

204.    Throughout the claims process, Day To Day repeatedly advised Liberty Mutual that its failure to provide coverage for Debris Removal and Sue and Labor and to promptly settle the claim was resulting in significant damages beyond the loss to Insured Goods, including fees for the delay of incoming shipments at the ocean container terminals and container demurrage fees, air freight charges for other shipments, late fees and markdowns for holiday orders, loss of accounts and other amounts and forced relocation to other less efficient facilities.

205.    By reason of the foregoing, Liberty Mutual has breached its contractual obligations and wrongfully denied and failed to pay Day To Day's claim, despite the claim being a valid and covered loss under the Cargo Policy.

206.    As a result of the foregoing acts of Liberty Mutual, Day To Day has been damaged in amounts to be determined at trial, but which are believed to be no less that Ninety Two Million ($92,000,000) Dollars.

### AS AND FOR A FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

207.    Day To Day repeats and realleges all of the allegations in paragraphs 166 to 206 hereof as if set forth at length herein.

208.    Day To Day performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Cargo Policy.

209.    Liberty Mutual has breached its obligations under the Cargo Policy issued to Day To Day and has wrongfully partially denied and failed to tender insurance coverage pursuant to the terms and conditions of the Cargo Policy.

210.    As a result of the foregoing breaches, Day To Day seeks a declaratory judgment determining that Day To Day is entitled to coverage for its claim of loss or damage to Insured Goods pursuant to the terms and conditions of the Cargo Policy issued by Liberty Mutual.

## AS AND FOR A SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT)

211.    Counterclaimants reallege and incorporate by reference Paragraphs 166 through 210 hereof as if set forth at length herein.

212.    Day To Day performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Cargo Policy.

213.    Liberty Mutual has breached its obligations under the Cargo Policy issued to Day To Day and has wrongfully partially denied and failed to tender insurance coverage pursuant to the terms and conditions of the Cargo Policy.

214.    As a result of the foregoing breaches, Day To Day has been damaged in amounts to be determined at trial, but which are believed to be no less that Ninety Two Million ($92,000,000) Dollars.

## AS AND FOR A THIRD CAUSE OF ACTION
### (INSURER BAD FAITH)

215.    Day To Day repeats and realleges all of the allegations in paragraphs 166 to 214 hereof as if set forth at length herein.

216.    Pursuant to the California Insurance Code and various other statutes, rules, regulations, case authority and laws, Liberty Mutual owed Day To Day, its insureds, a duty of fairness and good faith, including but not limited to in the timely and good faith investigation of,

affirmation of, settlement of, and communication regarding claims made under an insurance policy.

217.     Liberty Mutual has acted in tortious bad faith toward Day To Day, including, but not limited to, denial of coverage for Day To Days' loss and full payment under the Policy; through aggressive, hostile, unreasonable, and uncooperative posture in their dealings and communications with Day To Day or its agents; through lack of full disclosure of various positions and activities regarding the Cargo Policy and the loss; and through refusal and failure to properly investigate or take into account investigative findings in connection with the loss.

218.     As a result of Liberty Mutual's bad faith conduct, Day To Day has been damaged in amounts to be determined at trial, but which are believed to be no less that Ninety Two Million ($92,000,000) Dollars.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING)

219.     Day To Day repeats and realleges all the allegations in paragraphs 166 to 218 hereof as if set forth at length herein.

220.     The parties entered into the Cargo Policy, the terms of which included an implied covenant of good faith and fair dealing by which Liberty Mutual agreed not to act in a manner so as to improperly or unfairly deny Day To Day the benefits of the Cargo Policy.

221.     Day To Day performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms of the Cargo Policy, other than to the extent excused, waived, or prevented from so performing, including by Liberty Mutual.

222.     Liberty Mutual has partially performed under the Policy, among other ways, by making payment with respect to a very small portion of Insured Goods lost or damaged in the Fire.

223.    Liberty Mutual has breached the implied duty of good faith and fair dealing it owes Day To Day by, among other ways, failing to cover the full extent of loss or damage to Insured Goods under the Policy, and by placing Day To Day in financial peril due to the failure to cover all such losses.

224.    As a result of Liberty Mutual's bad faith conduct, Day To Day has been damaged in amounts to be determined at trial, but which are believed to be no less that Ninety Two Million ($92,000,000) Dollars.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (UNFAIR BUSINESS PRACTICES)

225.    Day To Day repeats and realleges all of the allegations in paragraphs 166 to 224 hereof as if set forth at length herein.

226.    Liberty Mutual's acts constituted business practices that were unlawful, unfair and fraudulent, which acts constitute unfair competition within the prohibitions of California Business and Professions Code section 17200 et seq.

227.    As a result of Liberty Mutual's unfair business practices, Day to Day is entitled to equitable relief including but not limited to restitution.

### <u>PRAYER</u>

**WHEREFORE**, Day To Day demands judgment of the Court against Liberty Mutual as follows:

1.    For a declaration that there is coverage under the Cargo Policy, to indemnify Day To Day for the loss or damage to Insured Cargo in amounts to be determined at trial but which amounts are believed to be no less than   Ninety Two Million ($92,000,000) Dollars;

2.    For damages to Day To Day in amounts to be determined at trial but which amounts

are believed to be no less than Ninety-Two Million ($92,000,000.00) Dollars;

3.      For equitable relief including restitution;

4.      For an Order dismissing Liberty Mutual's complaint in its entirety; and

5.      For punitive damages such other and further relief as is just and proper including

attorneys' fees and costs as allowed by law.

Dated: July 28, 2022            Respectfully submitted,
       New York, New York

                                **RUBIN, FIORELLA**
                                **FRIEDMAN & MERCANTE LLP**

                                **CONKLE, KREMER & ENGEL**
                                **Professional Law Corporation**
                                *Attorneys for Defendants and Counterclaimants*
                                *Day to Day Imports Inc., Oxgord Inc. and Virgin Scent*
                                *Inc., and Defendant Stanzino Inc.*

                                By:  _____
                                     Michael E. Stern, Esq.
                                     James E. Mercante, Esq.
                                     Rubin, Fiorella, Friedman & Mercante, LLP
                                     630 Third Avenue, 3rd Floor
                                     New York, NY 10017
                                     Tel: 212-953-2381
                                     Fax: 212-953-2462
                                     E-Mail: mstern@rubinfiorella.com
                                     E-Mail: jmercante@rubinfiorella.com

                                     Eric S. Engel *(Pro Hac Vice Pending)*
                                     Evan Pitchford (*Pro Hac Vice Pending*)
                                     Derrick Y. Chu (*Pro Hac Vice Pending*)
                                     Conkle, Kremer & Engel, PLC
                                     3130 Wilshire Boulevard, Suite 500
                                     Santa Monica, CA 90403-2351
                                     Tel: 310-998-9100
                                     Fax: 310-998-9109
                                     Email: e.engel@conklelaw.com
                                     Email: e.pitchford@conklelaw.com
                                     Email: d.chu@conklelaw.com

## <u>DEMAND FOR A JURY TRIAL</u>

Defendants and Counterclaim Plaintiffs demand a jury trial of all issues so triable in the

above-captioned matter.

Dated: July 28, 2022            **RUBIN, FIORELLA**
New York, New York         **FRIEDMAN & MERCANTE LLP**
*Attorneys for Defendants and Counterclaimants*
*Day to Day Imports Inc., Oxgord Inc. and Virgin Scent*
*Inc., and Defendant Stanzino Inc.*

CONKLE, KREMER & ENGEL
Professional Law Corporation


By: _____
Michael E. Stern, Esq.
James E. Mercante, Esq.
Rubin, Fiorella, Friedman & Mercante, LLP
630 Third Avenue, 3rd Floor
New York, NY 10017
Tel: 212-953-2381
Fax: 212-953-2462
E-Mail: mstern@rubinfiorella.com
E-Mail: jmercante@rubinfiorella.com

Eric S. Engel *(Pro Hac Vice Pending)*
Evan Pitchford (*Pro Hac Vice Pending*)
Derrick Y. Chu (*Pro Hac Vice Pending*)
Conkle, Kremer & Engel, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, CA 90403-2351
Tel: 310-998-9100
Fax: 310-998-9109
Email: e.engel@conklelaw.com
Email: e.pitchford@conklelaw.com
Email: d.chu@conklelaw.com