UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff,

-against-

DAY TO DAY IMPORTS, INC., et al.,

Defendants.

22-CV-02181 (AT) (RFT)

**OPINION AND ORDER**

**ROBYN F. TARNOFSKY,** United States Magistrate Judge.

On February 29, 2024, Defendants filed a letter-motion seeking a conference in anticipation of their motions to compel the deposition of William Fennell, an attorney formerly employed by Plaintiff's counsel, and to quash Plaintiff's subpoena to depose Mark Kremer, Defendants' former counsel. (*See* ECF 80.) On the same day, Plaintiff filed a motion to quash the Fennell deposition subpoena (*see* ECF 81), followed on March 1, 2024 by a letter-motion to quash the Fennell deposition subpoena (*see* ECF 84). Defendant filed a letter-response to Plaintiff's motion to quash and letter-motion to quash. (*See* ECF 86.) I held a conference on March 11, 2024. For the reasons set forth below, ECF 80, which seeks to compel the Fennell deposition, is DENIED; and ECF 81 and ECF 84, which both seek to quash the Fennell deposition subpoena, are GRANTED.[1]

**BACKGROUND**

The parties have been litigating this case for nearly two years. (*See* ECF 1.) Fact discovery was initially scheduled to be completed by November 18, 2022. (*See* ECF 33.) The deadline to complete discovery has been extended five times. (*See* ECF 46, ECF 51, ECF 62, ECF 66, ECF 74.) Most recently, following a conference on February 1, 2024, at which I required the parties to state what additional

---

[1]     Plaintiff has represented that it does not intend to pursue a deposition of Defendants' former litigation counsel, Mark Kremer, if the Fennell deposition subpoena is quashed.

depositions they wanted to take before fact discovery ended, I issued an Order that all fact discovery was to be completed by March 10, 2024; that for the period from February 20, 2024 through March 10, 2024, fact discovery would be limited to the depositions of Prologis, Iron Rock, PCB Bank, Dynamic Environmental, the Nourollah brothers, and Heather Connell; and that additional discovery would be permitted only for extraordinarily good cause shown. (*See* ECF 74.) Defendants made no mention at the February 1 conference of a desire to depose Fennell.

## ANALYSIS

### I.      Defendants Have Not Shown the Required Extraordinarily Good Cause for the Requested Discovery

Defendants have failed to demonstrate extraordinarily good cause to expand the remaining permissible scope of fact discovery to include the deposition of Fennell. Defendants state that they did not bring to my attention at the February 1 conference the possibility that they would seek Fennell's deposition because they did not yet have the transcript from the claims handler's deposition, which led them to realize they needed Fennell's deposition, and because the parties had not yet met and conferred on the issue. (*See* ECF 80, Letter-Motion at 2 n.1.) While the transcript may not yet have been available, the very same lawyers attended both the claims handler's deposition and the subsequent discovery conference with me. Under the circumstances, there is no excuse for Defendants' failure to raise the possibility that they might want to take Fennell's deposition and no good cause for permitting the Fennell deposition.

### II.     Defendants Are Not Entitled To Depose Plaintiff's Former Litigation Counsel

I would not compel the Fennell deposition even if Defendants had told me at the February 1 conference that they were contemplating seeking this deposition. Defendants learned at the January 30, 2024 deposition of Plaintiff's claims handler that Defendants' former litigation counsel, Fennell, had

2

ghostwritten two reservation of rights letters sent by Plaintiff to Defendants shortly after the fire that

led to their insurance claims. Defendants argue that as a result, Fennell engaged in claims-handling

activity, which made his communications with Plaintiff discoverable. (*See* ECF 80, Defs.' Letter-Mot. at

3.) Plaintiff responds that Fennell was not involved in Plaintiff's claims handling or claims adjustment

process and that he "acted as coverage counsel" and not "as a claim investigator"; and that work

product protection attaches to materials prepared after it decided to decline coverage in part, before

the letters were drafted. (*See* ECF 84, Pl.'s Letter-Mot. at 4.) Defendants counter that Plaintiff, by

sending them the reservation of rights letters drafted by Fennell, waived any privilege that may have

attached to deposition testimony about those letters; and that Plaintiff has no claim of work product

protection before it filed this lawsuit. (*See* ECF 86, Defs.' Letter-Response at 2.) Based on the parties'

submissions and their argument at the March 11 conference, I conclude that Fennell acted as coverage

counsel and did not engage in claims-handling activity. Therefore, Fennell's  communications with

Plaintiff are privileged, and so he may not be deposed by Defendants. Because I find that the

communications in question are privileged, I do not reach the question of when the work product

protection attached to Fennell's communications with Plaintiff.

     A.    <u>Legal Framework for the Analysis of Privilege</u>

     Under New York law,[2] the attorney-client privilege requires "the existence of an attorney-client

relationship, a communication made within the context of that relationship for the purpose of obtaining

legal advice, and the intended and actual confidentiality of that communication." *Safeco Ins. Co. of Am.*

---

[2]     Both Plaintiff and Defendants treat New York law as governing this discovery dispute, *see, e.g.*, ECF 80, Defendants' Letter-Motion at 2-3 (citing and discussing New York law); ECF 84, Plaintiff's Letter-Motion at 3-5 (same), and so I will do so as well. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (internal quotation marks and citation omitted)).

*v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011) (citation omitted). The attorney-client privilege is

"limited to communications – not underlying facts." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d

371, 377 (1991). It does not require anticipated litigation; a communication is privileged when it involves

providing or seeking legal advice. *See Spectrum*, 78 N.Y.2d at 380 ("[T]he attorney-client privilege is not

tied to the contemplation of litigation."). "The inclusion of nonprivileged information 'in an otherwise

privileged lawyer's communication to its client – while influencing whether the document would be

protected in whole or only in part – does not destroy the immunity.'" *105 St. Assocs., LLC v. Greenwich*

*Ins. Co.*, No. 05-CV-9938 (VM) (DF), 2006 WL 3230292, at *3 (S.D.N.Y. Nov. 7, 2006) (quoting *Spectrum*,

78 N.Y.2d at 378).

The privilege analysis sometimes becomes complicated in connection with insurance claims.

"Under New York law, an insurance company's claim handling activities are generally subject to

discovery even if they were performed by an attorney." *In re Residential Cap., LLC*, 575 B.R. 29, 35

(Bankr. S.D.N.Y. 2017). As this Court has explained, in that situation,

> [t]he key question is whether the attorney is predominantly investigating an insurance claim or providing legal advice. *See State Farm Mut. Auto. Ins. Co. v. 21st Century Pharmacy, Inc.*, No. 17-CV-5845 (MKB) (VMS), 2020 WL 729775, at *3 (E.D.N.Y. Feb. 12, 2020) ("The critical inquiry is whether the communication was  . . . primarily a report[ ] of an investigation of [a] claim and therefore discoverable or primarily or predominantly of a legal character and therefore protected by the attorney-client privilege." (alteration in original) (citation omitted); *105 St. Assocs.*, 2006 WL 3230292, at *3 ("Although '[i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely *investigating* a claim on a policy,' . . . when such communications relate to *legal advice*, they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim." (emphasis in original) (quoting *Evanston Ins. Co. v. Oea, Inc.*, Misc. M8-85 (CM), 2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006) (related case No. 02-1505-DFL-PAN (E.D. Cal.)). If the attorney is investigating the claim, no privilege applies because "[a]n insurer cannot shield such documents from discovery by using the same lawyer to handle the coverage decision and any ensuing coverage litigation." *Evanston Ins. Co.*, 2006 WL 1192737, at *4.

*Roc Nation LLC v. HCC Int'l Ins. Co.*, PLC, No. 19-CV-0554 (PAE), 2020 WL 1970697, at *2-3 (S.D.N.Y. Apr. 24, 2020).

The burden of establishing the attorney-client privilege is borne by the party asserting the privilege, which in this case is Plaintiff. *See Egiazaryan v. Zalmayev,* 290 F.R.D. 421, 428 (S.D.N.Y. 2013). The burden may be met by a showing based on "competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." *Id.*

### B. Plaintiff Has Demonstrated that Fennell Did Not Act as a Claims Adjuster

Defendants argue that because Fennell drafted two reservation of rights letters sent by Plaintiff to Defendants shortly after the fire that led to their insurance claims, Fennell necessarily engaged in claims-handling activity (*see* ECF 80, Defs.' Letter-Mot. at 3); and that  sending Defendants the reservation of rights letters drafted by Fennell waived any privilege that may have attached to deposition testimony about those letters. (*See* ECF 86, Defs.' Letter-Response at 2.) Plaintiff responds that "coverage counsel can provide claims analysis, advise on potential coverage issues, supply legal advice regarding the claim, and provide a recommendation on the final claim determination without it constituting claims handling activities." (ECF 84, Pl.'s Letter-Mot. at 4 (citing *In re Residential Cap.*, 575 B.R. at 37).)

*In re Residential Capital* provides instructive guidance on the types of activities performed by an attorney acting as a claims handler as opposed to coverage counsel. *See* 575 B.R. at 37 (explaining that claims handlers received notices of claim, opened claims files, requested and gathered information from the insurance broker and the insured, and made the ultimate determinations about whether to provide coverage on claims, while coverage counsel analyzed and made recommendations on potential

coverage issues). The record here supports a conclusion that Fennell acted as coverage counsel and not as a claims handler.

Plaintiff's claims handler stated at his deposition that an attorney from the firm representing Plaintiff in connection with Defendants' insurance claim drafted the two reservation of rights letters to Defendants but that he approved the letters. (*See, e.g.*, ECF 84-6, Excerpts of Deposition Transcript of Laurent Coussa at 160:19-161:8.) In Fennell's affirmation, he states that he "did not decid[e] whether the claim should be accepted and paid or rejected and denied" and that he prepared draft letters "based on information and facts provided by [Plaintiff] or its investigators, not any independent investigation." (ECF 84-1, Affirmation of William M. Fennell in Support of Letter-Motion To Quash ("Fennell Aff.") ¶¶ 6-7.) This evidence supports a conclusion that Fennell acted as coverage counsel by performing analysis about coverage and making recommendations to Plaintiff, while Plaintiff's claims handler performed the investigation into the claim, provided information to Fennell, and made the ultimate decision on coverage. Because Fennell acted as coverage counsel and not as a claims handler, his communications with Plaintiff are privileged, and he therefore may not be deposed by Defendants.

That Fennell's recommendations about coverage were contained in draft reservation of rights letters approved and adopted by Plaintiff and sent to Defendants does not, as Defendants suggest (*see* ECF 86, Defs.' Letter-Response at 2-3), change the analysis. Defendants have the letters. They were entitled to ask the claims handler at his deposition about those letters and the basis for his decision to approve and send them, to the extent the questions did not invade the attorney-client privilege by asking about the legal advice provided by Fennell provided. But Defendants are not entitled to depose Fennell to ask about the legal advice he provided to the claims handler.

This is not a situation where an insurer seeks to "shield" discovery "by using the same lawyer to handle the coverage decision and any ensuing coverage litigation," *Evanston Ins. Co. v. OEA, Inc.*,

6

2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006). In *Evanston Insurance,* on which Defendants rely (*see* ECF 86, Defs.' Letter-Response at 3), the insurer's internal claims handler testified at his deposition that counsel for the insurer in the coverage lawsuit had performed the factual investigation of the disputed claim. *See* 2006 WL 1192737, at *2. By contrast, Fennell states under penalty of perjury in his affirmation that he "never performed any investigation into the claim." (ECF 84-1, Fennell Aff. ¶ 6.) There is nothing to the contrary in the record. I therefore conclude that Plaintiff has met its burden of demonstrating with competent evidence that Fennell acted as an attorney providing legal rather than business advice. As a result, his communications with Plaintiff are protected from disclosure based on the attorney-client privilege.

**CONCLUSION**

ECF 80, which seeks to compel the Fennell deposition, is DENIED. ECF 81 and ECF 84, which both seek to quash the Fennell deposition subpoena, are GRANTED. Each party shall bear its own costs and attorneys' fees. The Clerk of Court is respectfully requested to terminate ECF  80, ECF 81, and ECF 84**.**

By way of reminder, the parties have until **March 24, 2024** to exchange Rule 56.1 statements in connection with anticipated motions for summary judgment; and the deadline for completion of expert discovery is **April 24, 2024**. I will not extend these deadlines absent very good cause shown, and then only for limited specified purposes. The parties are directed to submit a joint letter on the docket by **March 18, 2024,** stating whether they would like the Court's assistance with settlement efforts, either through a settlement conference or a referral to the Court-annexed mediation program.

Dated:  March 11, 2024
New York, New York

SO ORDERED.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**